UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID SMELSER

        Plaintiff,                    CIVIL ACTION NO. 06-11931

      v.                                 DISTRICT JUDGE LAWRENCE P. ZATKOFF

COMMISSIONER OF              MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This is an action for judicial review of the defendant's decision denying plaintiff's application for social security disability benefits and supplemental security income (SSI). Each side has filed its motion for summary judgment. For the reasons discussed in this Report, it is recommended that judgment be granted for the defendant and the decision denying benefits be affirmed.

### II. Background

In his application for Title II disability benefits and supplemental security income (SSI), plaintiff alleged that he became disabled as of June 15, 2002, due to fibromyalgia and hepatitis C. (Tr. 50-53, 59, 265-268) After the initial denial, plaintiff requested a hearing before an administrative law judge (ALJ). The hearing was held May 10, 2005, before ALJ Golden. (Tr. 274-85) Plaintiff was represented and testified at the hearing. The ALJ also heard testimony from a vocational expert (VE). Plaintiff was born in April, 1958, and was 48 at the time of the ALJ's decision. This makes him a "younger individual" under the Social Security Act. He has an eleventh grade ("limited") education. He has past relevant work as a roofer, owner of a

roofing company, roofing foreman, and roofing union president. (Tr. 80) But, he is without readily transferable skills. (Tr. 23) The ALJ considered the medical evidence and the testimony. The ALJ found that plaintiff was unable to perform his past work but retained the ability to other work which existed in significant numbers in the economy. The vocational expert identified sedentary jobs with a sit/stand option including telemarketer, cashier, information clerk, and surveillance system monitor. Thus, the ALJ found that plaintiff was not entitled to benefits. After plaintiff took an unsuccessful appeal to the Appeals Council, the ALJ's decision became the final decision of the agency.

On April 25, 2006, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The case was assigned to Magistrate Judge Capel but was later transferred to the undersigned. In his motion for summary judgment, plaintiff argues that the ALJ erred in finding that he did not meet the Listings of impairments, that the ALJ erred in concluding that his complaints of disabling pain were not fully credible, and that substantial evidence does not support the residual functional capacity assessment determined by the ALJ or the ALJ's finding that plaintiff could perform substantial gainful activity. The Commissioner contends that the ALJ's decision is supported by substantial evidence and should thus be affirmed.

### III. Legal Standards

#### A. Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears of the burden of proving that he or she is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate Social Security Disability claims, including SSI claims. See 20 C.F.R. § 404.1520. As discussed in Foster, Id. at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she had done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at the fifth step to establish the claimant's ability to do other work.

**B. Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance of the evidence as a reasonable mind might accept as adequate to support a conclusion." Brainard, 889 F.3d at 681. Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

## IV. Analysis

Plaintiff argues that (1) plaintiff's fibromyalgia meets a Listed Impairment, (2) the ALJ erred in finding plaintiff's testimony not totally credible, (3) substantial evidence does not support the determination of residual functional capacity, and (4) substantial evidence does not support the determination that plaintiff is capable of performing substantial gainful activity.

### A. Evaluation of Plaintiff's Fibromyalgia

Plaintiff contends that the ALJ should have evaluated plaintiff's knee pain and fibromyalgia [FMS] under Listing 1.02 (Major Dysfunction of a Joint due to any Cause) along with Social Security Ruling 99-2p. Social Security Ruling 99-2p indicates that fibromyalgia, like Chronic Fatigue Syndrome, may meet a Listed Impairment. The Sixth Circuit has observed that fibromyalgia presents a difficult and peculiar case because it can only be diagnosed by elimination of other conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue. Preston v. Secretary of Health and Human Services, 854 F.2d 815, 819 (6th Cir. 1988). However, as is discussed below, plaintiff's diagnosis of fibromyalgia was really not at all substantiated until an examination by Dr. McCune in 2004. Even there, the sole

statement by Dr. McCune related to this diagnosis is one sentence: "He had tender points of fibromyalgia present." Plaintiff told the doctor that he experienced arthralgias in all the joints of his lower extremities after prolonged exertion and he had significant post exertional fatigue. Dr. McCune reports that plaintiff was status post knee surgery with mild tenderness at the medial joint line and the rest of the joint exam was unremarkable. He has "chronic myofascial pain, polyarthriagias." He was on Elavil, Neurotin and Vidocin. Plaintiff was counseled to reduce the Vicodin, increase his exercise program with tai chi and swimming, balancing and gait exercise. (Tr. 259-263)

Listing 1.02 provides that a claimant is presumptively disabled if he has "major dysfunction of a joint" characterized by a "gross anatomical deformity" which results in an inability to walk effectively or an inability to perform gross and fine movements effectively. See, 20 C.F.R. Pt. 404 Subpt P, App. I, 1.02. There is no evidence in the record to support such a finding and plaintiff points to none. Plaintiff states that he has bilateral knee problems which the ALJ did not specifically list as a severe impairment.

The ALJ discussed all the evidence regarding knee pain in the opinion and found that medically it appears linked to either or both the FMS or hepatitis C. (Tr. 16) Plaintiff states that his knee problems have required surgical intervention and a cane and therefore, they are severe. In February, 2003, plaintiff had an MRI of his right knee which showed a tear in the posterior horn of the lateral meniscus. (Tr. 106) Dr. Perry, to whom plaintiff was referred, diagnosed degenerative meniscal tears and opined that there was no need for surgery. (Tr. 107) Plaintiff was to take Glucosamine and an anti-inflammatory. (Tr. 107) In March, 2003, Dr. Perry reported that plaintiff's x-rays show no degenerative changes. (Tr. 107) In July 2003, he was noted to have a limp by Dr. Plomaritis, D.O. (Tr. 196) On examination at the University of Michigan in October, 2003, plaintiff had mild tenderness in the medial joint line at the knee and trouble walking stairs. Ultimately, in February, 2004, plaintiff had knee surgery which

according the medical records substantially remedied his knee problems. Two months after surgery, plaintiff reported that his right knee was no longer bothersome to him. (Tr. 178) Although the knee problem may be "severe," plaintiff has not shown that he meets the Listing. He does not cite medical opinions consistent with that claim nor has he explained how his impairment meets the specific criteria for Listing 1.02. There does not seem to be medical support in the record for the same. As the government notes, where there is merely an averment in a perfunctory manner, unaccompanied by some effort at developing argumentation, the issue is deemed waived. McPherson v. Kelsey, 125 F.3d 989, 995 (6th Cir 1997). Plaintiff does not meet the Listings.

### B. ALJ's Evaluation of Pain and Credibility

Plaintiff next claims the ALJ did not properly evaluate his credibility and his subjective complaints of disabling pain. The ALJ found him not to be fully credible. Pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984). Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff. Houston, 736 F.2d at 367; Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997); Villarreal v. Secretary of HHS, 818 F.2d 461, 463 (6th Cir. 1987). Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly. Villarreal, 818 F.2d at 463 and 464.

In Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir. 1986), this circuit modified its previous holdings that subjective complaints of pain may support a claim of disability. Subsequently, the Social Security Act was modified to incorporate the standard. 20 C.F.R. § 404.1529 (1995). A finding of disability cannot be based solely on a plaintiff's subjective allegations of pain. There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that

condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. Jones v. Secretary of HHS, 945 F.2d 1365, 1369 (6th Cir. 1991).

As a review of the evidence shows, plaintiff demonstrated underlying medical conditions – probable fibromyalgia, hepatitis C, and knee pain – that could be of such a severity to reasonably give rise to significant pain. In addition, plaintiff appears to be on considerable medications including Vicodin and Neurotin. However, in this case, the amount of medication is not determinative because as early as 2002 and then again in November, 2003, his physicians have told him to reduce the Vicodin and take Flexaril and to increase his exercise. Ultram has also been recommended for his pain. (Tr. 259-61) Plaintiff reported that he was taking Vicodin 750 mg four times a day when he was seen in the St. John emergency room after falling down two flights of stairs on February, 2004. This was after the surgery which had reduced his right knee pain. (Tr. 248)

Plaintiff's history of reporting a need for high levels of Vicodin and a level of chronic disabling pain is inconsistent with the objective medical evidence. X-rays of his cervical and lumbosacral spine in November, 2002, were normal. (Tr. 137) His EMG in December, 2002, was also normal. (Tr. 93, 97) His labs in October, 2002, were completely normal including a PCR for Hepatitis C and testing for Lyme disease. (Tr. 136, 259) Despite his Hepatitis C status, objective testing shows a normal liver/spleen scan in February, 2003. (Tr. 146) Upon physical examination in June, 2003, plaintiff had no cyanosis, clubbing, edema or varicose veins. There was no lymphadenopathy. Peripheral pulses were not well palpable in the lower extremities but both feet were warm. (Tr. 153) There was no pain, swelling, limitation of movement, crepitus, effusion or inflammation in any joints except some movements of the hip and knees were restricted due to obesity and crepitus in both knees. There was no muscle wasting in any joint. He could ambulate without any walking aid, tip toe, perform a heel walk and tandem gait. He

could squat and arise but with complaint of pain in his knees. Deep tendon reflexes in all extremities were normal. (Tr. 153) MRIs of the knees in December, 2003, showed osteoarthritic changes in the left knee joint but no ligament tear or other problem. The right knee continued to show the tear but there was no effusion. (Tr. 174) Plaintiff underwent surgery to correct the tear in February, 2004. (Tr. 177) By April he reported improvement, was to continue his physical therapy, and had satisfactory healing. (Tr. 178) Further, plaintiff's abilities and daily activities do not support a condition associated with disabling pain. He stays home and takes care of his five children ages nine through sixteen. (Tr. 94) He has coached youth sports, goes to the grocery, socializes with friends, and performs housework. (Tr. 71-73, 151) His diffuse arthralgias and myalgias have been chronic for thirty years. (Tr. 96) The ALJ's determination of credibility is consistent with the medical record and supported by substantial evidence.

### C. Substantial Evidence Supports the Decision

Plaintiff argues that substantial evidence does not support the residual functional capacity assessment determined by the ALJ or the ALJ's finding that plaintiff could perform substantial gainful activity. Here, he claims that the ALJ did not give sufficient weight to the medical opinions of Dr. Baron and Dr. Hudock. The ALJ rejected these and found that they were inconsistent with other medical evidence and not well supported. The ALJ's weighing of these opinions was reasonable and appropriate under the regulations and case law. See, § 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.") Great deference is to be given to medical opinions and diagnoses of treating physicians. Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985). It is also true that complete deference is given when said opinions are uncontradicted. However, in both instances, the opinion of the treating physician must be based on sufficient medical data. Garner v. Heckler, 745 F.2d 383, 391 (6th Cir. 1984); Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984). Where the doctor's physical capacity

evaluation contains no substantiating medical opinions and is inconsistent with the doctor's previous opinions, the defendant is not required to credit such opinions. Villarreal v. HHS, 818 F.2d 461, 463 (6th Cir. 1987). The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician. Warner v. Commissioner of Social Security, 375 F.3d 387 (2004) (citing Harris v. Heckler, 756 F.2d at 435).

The court recognizes that with fibromyalgia objective evidence is sometimes difficult to obtain and the treating physician's testimony will often not be given controlling weight. However, fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia presents no objectively alarming signs. See, Rogers v. Commissioner of Social Security, __ F.3d __, n.3; 2007 WL 1501302 (6th Cir., 5/24/2007) (slip op. at 6-7); Preston v. Secretary of HHS, 854 F.2d 815, 820 (6th Cir. 1988)(per curiam). In Rogers, the court reviewed the exhaustive procedures necessary for diagnosis of fibromyalgia, including tenderness of focal points and the ruling out of other possible conditions through objective testing and clinical trials. Here, unlike in Rogers, there is some indication of fibromyalgia but no support for finding that it is at a level of disabling severity. The impression of Dr. Baron, who examined plaintiff in November, 2002, was that he had diffuse arthralgias and myalgias, chronic for thirty years. The impression was chronic pain syndrome and possibly fibromyalgia. No focal point testing was noted anywhere in the report. (Tr. 94-96) Subsequently, in March, 2003, Dr. Baron opined that possibly the pain could be secondary to the Hepatitis C. (Tr. 212) In June, 2003, plaintiff was evaluated by Dr. Banerji, an internist, who found osteoarthritis of the knee joints but no functional limitations orthopedically and "alleged history of fibromyalgia." (Tr. 151-153) In October, 2003, Dr. Baron opined that plaintiff has marked arthralgias, myalgias, paresthesis, and fatigue. No examinations, reports of focal tenderness, or objective testing support the statement. Although Dr. Baron opines that plaintiff is unable to work, has to lie down every two hours, and is disabled, no findings are mentioned to

support the conclusion. In November, 2003, Dr. McCune at University of Michigan did not report any tender points of fibromyalgia. It was not until March, 2004, that Dr. McCune mentioned that plaintiff had tender points of fibromyalgia present but we are not told how many or other details. Subsequently, Dr. Baron completed a fibromyalgia questionnaire. (Tr. 208-211) Although plaintiff relies on it, a close review indicates that much of the conclusion is a recitation of plaintiff's complaints. "Plaintiff states that he has constant pain and it is difficult to concentrate on anything else." (Tr. 208) In any event, other than the unsupported conclusory letter of Dr. Baron, there have not been findings of the functional limitations of his condition. To the extent that plaintiff's reports of fatigue, pain after prolonged exertion, and difficulty concentrating are deemed credible, the ALJ took this factor into account in limiting plaintiff to a limited range of sedentary work and simple routine tasks. (Tr. 282)

The ALJ found that plaintiff could perform a limited range of sedentary work, that is, sedentary work which provided for a sit/stand option. Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §404.1567(A). This finding is consistent with the medical evidence and plaintiff's reported daily activities. The ALJ took into account plaintiff's impairments and limitations in assessing his exertional limits. In addition, the hypothetical propounded to the vocational expert (VE) and relied on by the ALJ properly included only those limitations which the ALJ found were supported by the record.

Accordingly, it is recommended that judgment be granted for the defendant and the decision denying benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                                s/Virginia M. Morgan
                                                Virginia M. Morgan
                                                United States Magistrate Judge

Dated: May 31, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on May 31, 2007.

                                                s/Jane Johnson
                                                Case Manager to
                                                Magistrate Judge Virginia M. Morgan